IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Submitted on Briefs December 13, 2005

## STATE OF TENNESSEE, ex rel., SHARON DENISE TOWNSEND v. ERIC WAYNE WILLIAMSON

**An Appeal from the Juvenile Court for Shelby County**
**Nos. P155 & P658    Claudia S. Haltom, Referee**

---

**No. W2004-02980-COA-R3-JV - Filed June 1, 2006**

---

This appeal concerns two related, but distinct, proceedings in Juvenile Court. One was a custody proceeding, and the other a contempt of court proceeding arising from a failure to comply with child support obligations. Separate docket numbers were assigned to each case. After a judgment was rendered in the contempt proceeding, the father filed a notice of appeal. Several months later, another judgment was rendered in the custody modification proceeding. No notice of appeal was filed for the custody modification proceeding. After the case was appealed to the Court of Appeals, the father obtained a consolidation order from the Juvenile Court. On appeal, the father argues only that the Juvenile Court erred in its custody order. Finding that neither of the two orders is final and appealable, we must dismiss the father's appeal based upon a lack of jurisdiction and remand all proceedings to the Juvenile Court.

**Tenn. R. App. P. 3; Appeal from the Judgment of the Juvenile Court is Dismissed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S. and ALAN E. HIGHERS, J., joined.

Steven G. Roberts, Memphis, Tennessee, for Appellant Eric Wayne Williamson.

Robert S. Weiss, Memphis, Tennessee, for Appellee Sharon Denise Townsend.

### OPINION

This case illustrates the labyrinth of proceedings that can occur in the Juvenile Court of Memphis and Shelby County. The appeal is the result of coincident custody and contempt petitions in the Juvenile Court between the parents of the subject minor child M.A.W. (d/o/b May 22, 1998), namely, the father, Appellant Eric Williamson ("Father"), and the mother, Appellee Sharon Townsend ("Mother"). By virtue of a June 22, 2005 court order to consolidate the two matters,

Juvenile Court docket number P155 and docket number P658 are now jointly before this Court for review of the proceedings below.

M.A.W. was born out of wedlock in May 1998. Within five years, Father filed a petition to establish parentage of M.A.W. in the Juvenile Court for Memphis and Shelby County. The parentage action denoted as docket number P155 was filed on April 16, 2003. The petition requested that the court establish parentage and award the Father custody of M.A.W., or, in the alternative, establish a parenting schedule. On May 13, 2003, Juvenile Court Referee Felicia M. Hogan submitted her findings and recommendations, finding that Father was the biological father of M.A.W. An order set Father's child-support and medical expense payment obligations.

Docket number P658 began on June 4, 2003. On that date, Mother filed a petition for custody of M.A.W. in the Juvenile Court of Memphis and Shelby County, asserting that it was in M.A.W.'s best interest to be placed in Mother's custody. On January 12, 2004, Father filed an intervening petition seeking primary custody of M.A.W. In that petition, Father stated that joint custody had been awarded to both parties under the May 13, 2003 docket number P155 order, and since that time, a change in circumstances had occurred. Father contended that Mother improperly supervised M.A.W., and that awarding custody to Father was in M.A.W.'s best interest. For these reasons, Father stated, he was seeking sole custody of M.A.W. On March 17, 2004, Juvenile Court Referee Cary C. Woods submitted an order continuing the matter until June 2004.

On June 16, 2004, Referee Woods held a hearing on Father's custody petition under docket number P658. Father represented himself at the hearing and told Referee Woods that he was seeking primary custody of M.A.W. on a number of different grounds. Father's primary argument was that Mother was guilty of neglecting M.A.W's medical needs. Father asserted that Mother neglected, among other things, to administer medicine to M.A.W. for M.A.W.'s asthma. Father also maintained that Mother neglected M.A.W. by spending little time with M.A.W. and leaving M.A.W. at home alone for inappropriate periods of time. Moreover, Father asserted that Mother associated herself with unsavory men. Overall, Father argued that Mother had failed to properly care for M.A.W.'s physical, emotional, and social needs, and consequently it was in M.A.W.'s best interest to live with Father.

Representing herself at the hearing, Mother responded to the charges of medical neglect by explaining that M.A.W. suffered only three asthma attacks in the previous year, which demonstrated that his condition was steadily improving under her care. Additionally, Mother explained her work and school schedule, and informed the court that her fifteen year old daughter assisted in caring for M.A.W. while Mother was at work.

At the close of the parties' arguments, Referee Woods dismissed Father's petition for custody. Referee Woods explained to Father that his evidence regarding medical neglect lacked specificity, remarking, "You've not presented one thing to the Court that would indicate that the Mother has not properly cared for the child or presented the child in an unsafe environment."

Immediately after the hearing, Referee Woods entered his findings and recommendations, dismissing Father's petition and recommending that Mother retain primary custody of M.A.W.

On June 17, 2004, the day after his petition was dismissed in docket number P658, Father wrote a letter to Chief Judge Kenneth Turner of the Memphis and Shelby County Juvenile Court requesting a new hearing, a change of venue, a jury trial, and that a special judge be assigned to hear the case. No further action was taken on docket number P658 until September 2004.

On August 9, 2004, Mother filed a petition for contempt of court against Father, asserting that he failed to comply with the May 13, 2003 support order under docket number P155. Also on August 9, 2004, the State of Tennessee filed a petition for contempt under docket number P155 against Mother for failure to pay medical expenses. The State's petition asserted that Mother failed to pay a total of $257.50 for M.A.W.'s medical expenses and requested that Mother be held in civil contempt of court until that amount was paid.

On September 14, 2004, Father filed a petition under docket number P155 to modify the court's May 13, 2003 order setting Father's child-support obligations. Father's petition alleged that a change of circumstances necessitated modification of the May 2003 order.

On September 23, 2004, Father filed another request for a rehearing of the custody dispute under docket number P658. Father's request was granted that same day.

On October 20, 2004, Juvenile Court Referee Claudia S. Haltom entered her findings and recommendations with respect to Mother's August 9, 2004 contempt petition under docket number P155. Referee Haltom found that Father was capable of complying with the child support order, and recommended that Father be held in contempt of court for failure to follow the May 13, 2003 order under docket number P155. Additionally, Referee Haltom recommended that Father be confined to the Shelby County Jail until he purged himself of the contempt. Finally, Referee Haltom recommended dismissing the State's petition against Mother for contempt for failure to pay medical expenses. An order at the bottom of Referee Haltom's findings and recommendations provides, "The findings and recommendations of the Referee are hereby confirmed as the decree of this Court." The order has a stamped signature by the Juvenile Court Judge, but no indication of whether the document was filed with the clerk of the court.

On November 14, 2004, Father filed a notice of appeal. The notice of appeal specified that the decision being appealed from was the October 20, 2004 order regarding docket number P155.

On February 3, 2005, Special Judge Herbert Lane[1] signed an order dismissing Father's petition to rehear the June 16, 2004 custody order under docket number P658. Judge Lane's order noted that Father failed to appear at the rehearing. As with the earlier order, this order was not

_____

[1]Special Judge Herbert Lane is another Juvenile Court Referee, assigned as a Special Judge to hear Father's petition to rehear the decision of Referee Woods.

stamped by the clerk's office and includes no other indication of whether it was entered by the clerk of the court.

Based on the November 14, 2004 notice of appeal in docket number P155, this Court, on March 9, 2005, entered a show-cause order giving Father until March 23, 2005, to show cause why his appeal should not be dismissed for failure to comply with Rule 24 of the Tennessee Rules of Appellate Procedure.[2] On March 23, 2005, Father filed a request for an extension of time to comply with Rule 24. On March 24, 2005, based on a finding of good cause, this Court granted Father thirty additional days in which to comply with Rule 24.

On April 25, 2005, Memphis attorney Steven Roberts filed a notice of entry of appearance with this Court, indicating that he would represent Father on appeal. On the same date, Attorney Roberts filed a notice of filing transcripts, explaining that he was filing transcripts for docket numbers P155 and P658. Attorney Roberts' notice partially explained why the transcripts for both P155 and P658 were being filed together: "[Father], being pro se at the initial stages of this proceeding and under the impression that both Juvenile Court Actions, P155 and P658, were consolidated, transcripts of both proceedings are being filed in this cause."

Not until May 11, 2005, did Father file a motion to consolidate docket numbers P155 and P658. Father filed his motion to consolidate the two actions in the Juvenile Court for Memphis and Shelby County. The motion was granted, and the Juvenile Court consolidated docket numbers P155 and P658 on June 22, 2005, seven months after Father filed his notice of appeal in docket number P155.

On appeal, Father raises only one issue: whether the trial court erred in determining that no change of custody was warranted because no material change in circumstances occurred after the entry of the initial custody order. Thus, Father appeals only the custody dispute, which was decided under docket number P658, and not the contempt order decided under docket number P155. In response to Father's argument, Mother argues that Father's custody modification petition in docket number P658 is not properly before this Court because Father failed to preserve the custody issue for appeal.[3]

---

[2] Rule 24 of the Tennessee Rules of Appellate Procedure provides that an appellant must file a certified transcript with the clerk of the trial court within ninety days after filing the notice of appeal. Tenn. R. App. P. 24(b). Rule 24 also provides that an appellant can file a statement of the evidence or proceeding if no transcript is available. This statement must be filed with the clerk of the trial court within ninety days after filing of the notice of appeal. Tenn. R. App. P. 24(c). If no transcript or statement of the evidence is to be filed, the appellant must, within fifteen days of the filing of the notice of appeal, file a notice with the clerk of the trial court, and serve that notice upon the appellee, stating that no transcript or statement is to be filed. Tenn. R. App. P. 24(d).

[3] In attempting to address Mother's argument that his notice of appeal of the custody issue was not timely, Father explained that his efforts to appeal the custody determination in docket number P658 were confounded by the Juvenile Court's assignment of two docket numbers to the parties' disputes. This Court is not unsympathetic to the confusion inherent in the proceedings below, with each issue handled by a different Juvenile Court Referee and references to the

(continued...)

Before reaching the merits of the Juvenile Court's custody determination, or even the issue of whether Father's notice of appeal was timely filed, we must first ascertain whether we have jurisdiction to consider this appeal. To do so, we must determine whether either order of the Juvenile Court from which Father appeals was final. The parties have not addressed this issue. Regardless, we must do so. Under Rule 13(b) of the Tennessee Rules of Appellate Procedure, this Court must determine "whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review." Tenn. R. App. P. 13(b). Under Rule 3(a) of the Tennessee Rules of Appellate Procedure, the availability of an appeal as of right in civil actions requires, first, that a final judgment by entered by a trial court. Tenn. R. App. P. 3(a). Consequently, we must determine whether either of the two orders in this appeal were final judgments entered by a trial court.

As noted above, neither of the two orders bear any indicia, on their face, of entry by the clerk of the court. The Tennessee Rules of Juvenile Procedure do not address when a judgment or order is deemed final and effective. The issue, however, is addressed under the Tennessee Rules of Civil Procedure. In pertinent part, Rule 58 of the Tennessee Rules of Civil Procedure provides:

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is *marked on the face by the clerk as filed for entry*:
> (1) the signatures of the judge and all parties or counsel, or
> (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
> (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

Tenn. R. Civ. P. 58 (emphasis added). The operative question, then, is whether this Rule of Civil Procedure is applicable to the Juvenile Court matter before us.

Rule 1(b) of the Rules of Juvenile Procedure provides that the Tennessee Rules of Civil Procedure shall govern the proceedings in a Juvenile Court in certain types of cases. Among others, Rule 1(b) provides that the Rules of Civil Procedure shall apply to paternity cases filed in the Juvenile Courts. Tenn. R. Juv. P. 1(b). In the instant action, docket number P155 was initiated as a petition to establish parentage.[4] Therefore, applying Rule 1(b) of the Rules of Juvenile Procedure, the Rules of Civil Procedure are applicable to the proceedings under docket number P155. Consequently, the fact that the October 20, 2004 order has not been marked on its face by the Clerk

---

[3](...continued)

Juvenile Court Judge which were heard by yet another Referee appointed as Special Judge to hear the referred matter. This confusion would be compounded by the assignment of two different docket numbers to the custody and contempt petitions. Such a convoluted web of proceedings would be difficult for an attorney to unravel, much less a party proceeding pro se.

[4]*See In re C.K.G., C.A.G. & C.L.G.*, 173 S.W.3d 714, 723 (Tenn. 2005) (explaining, "the statute providing for an order of parentage is concerned solely with the establishment of paternity"); *see also* T.C.A. § 36-2-311(a).

of the Juvenile Court as filed for entry means that the order is not considered a final judgment under Rule 58 of the Tennessee Rules of Civil Procedure. As such, Father's notice of appeal in November 2004 was filed prior to entry of an effective final judgment. Without a valid final judgment in docket number P155, this Court is without jurisdiction to entertain any appeal arising out of that case.

Father's petition for custody under docket number P658 is not within the class of cases enumerated in Rule 1(b) of the Rules of Juvenile Procedure in which the application of the Rules of Civil Procedure is specifically deemed appropriate. However, as set forth in a recent decision by the Tennessee Supreme Court, the Rules of Civil Procedure may nevertheless be applicable if several conditions are met.

In ***Gonzalez v. Department of Children's Services***, 136 S.W.3d 613 (Tenn. 2004), the Tennessee Supreme Court considered whether grandparents could intervene in Juvenile Court proceedings. In that situation, the Rules of Juvenile Procedure did not address the standards for such intervention. Ultimately, the ***Gonzalez*** court ruled that Rule of Civil Procedure 24 was applicable to the Juvenile Court proceedings, based on three factors: (1) the Rules of Civil Procedure concerning intervention would apply in both chancery and circuit court proceedings to terminate parental rights;[5] (2) the Rules of Juvenile Procedure were silent as to intervention; and, (3) the application of the Rules of Civil Procedure would not "compromise the efficacy of juvenile proceedings." ***Id***. at 617. This same three-part analysis was utilized in ***In re W.B. IV***, 2005 WL 1021618, at *13, n. 24 (Tenn. Ct. App. Apr. 29, 2005), to apply Tennessee Rule of Civil Procedure 15 to a termination of parental rights proceedings in Juvenile Court.

We apply this analysis to Father's petition for custody in docket number P658 in the instant case to determine whether Rule 58 of the Rules of Civil Procedure, governing the effective entry of final judgments, is applicable to the custody action below. First, we look at whether the circuit and chancery courts have concurrent jurisdiction with the Juvenile Court in matters of this nature. ***See Gonzalez***, 136 S.W.3d at 617. By statute, the three courts have concurrent jurisdiction to decide custody cases concerning children born out of wedlock:

> Notwithstanding any provision of law to the contrary, the juvenile court has concurrent jurisdiction with the circuit and chancery court of proceedings to establish the paternity of children born out of lawful wedlock and to determine any custody, visitation, support, education or other issues regarding the care and control of children born out of wedlock.

T.C.A. § 37-1-104(f). In the instant action, the child at issue, M.A.W., was born out of wedlock.

---

[5] Tennessee Rule of Civil Procedure 1 provides that the Rules of Civil Procedure "shall govern procedure in the circuit or chancery courts in all civil actions . . . *and in all other courts while exercising the jurisdiction of the circuit or chancery courts*." Tenn. R. Civ. P. 1 (emphasis added).

Second, as noted above, the Rules of Juvenile Procedure do not address the process for entering a final judgment.

Third, we look at whether the application of the Rule of Civil Procedure would compromise the efficacy of the Juvenile Court proceedings. *See Gonzalez*, 136 S.W.3d at 617. We can conceive of no way in which the efficiency of the Juvenile Court proceedings would be adversely affected. If anything, adhering to the requirements in Rule of Civil Procedure 58 for entry of a final judgment would serve to promote fairness by ensuring that all parties are aware when a final, appealable judgment has been entered. *See Taylor v. Taylor*, 2006 WL 618291, at *3 (Tenn. Ct. App. Mar. 13, 2006).

Consequently, we must conclude that Rule 58 of the Tennessee Rules of Civil Procedure is applicable to the custody action under docket number P658. As with the order on Mother's contempt petition, the order on custody is not "marked on the face by the clerk as filed for entry," as required under Rule 58 to be deemed a final order. Therefore, the order under docket number P658 is likewise not a final judgment.

As with docket number P155, then, Father's notice of appeal was filed before entry of a final order in docket number P658. Consequently, we must dismiss this appeal for lack of subject matter jurisdiction.

This appeal is dismissed and the cause is remanded to the Juvenile Court for further proceedings not inconsistent with this Opinion. The costs of this appeal are hereby taxed equally against Appellant Eric Williamson and Appellee Sharon Denise Townsend, and their sureties, for which execution may issue, if necessary.

---

HOLLY M. KIRBY, JUDGE